h ARMSTRONG, Judge.
In this legal malpractice action, the plaintiff, Charles W. Butler, appeals from a trial court judgment granting a motion for summary judgment filed by the defendant, George Chuzi. We reverse and remand for further proceedings.
Charles Butler is a former special agent with the Federal Bureau of Investigation (the “FBI”). He was appointed as a special agent on April 30, 1973. He was dismissed from that position on November 17, 1987 after being found no longer suitable for FBI employment. Shortly thereafter, Butler retained the defendant George Chuzi, an attorney, to represent him in connection with his dismissal.[1] Butler maintains that Chuzi agreed to “handle all claims that he had against the United States Government, including claims for disability income.” In |2the instant suit, filed in 1991, Butler claims Chuzi failed to properly handle and timely file a disability claim for him. In his answer to Butler’s suit, Chuzi stated that Butler retained him solely for the purpose of seeking his reinstatement to the FBI. Chuzi filed a motion for summary judgment which was granted by the trial court.
Summary judgments are reviewed de novo. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730. La. C.C.P. art. 966(B) provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. That article was recently amended. Subparagraph (A)(2) provides:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
Other new language provides:
(C) After adequate discovery or after a ease is set for trial, a motion which shows that there is not genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof an element essential to his claim, actions, of defense and on which he will bear the burden of proof at trial.
(G) Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.
In Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, this court held that amended La. C.C.P. art. 966 was subject to retroactive application. As to the effect of the amendments, we stated:
13[E]ven though legislative intent is to favor summary judgments, the amended version of C.C.P. art. 966 does not change the law regarding the burden of proof in a summary judgment proceeding. The burden of proof remains on the mover to show “that there is no genuine issue of material fact and that the mover is entitled to judgment as matter of law.” Only after the mover has met this burden may summary judgment be rendered against “an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.” Thus, even under the amended version of article 966, if genuine issues of fact remain, this Court must still reject summary judgment. [Citations omitted.]
To prevail on a claim for legal malpractice a plaintiff must prove: (1) there was an attorney-client relationship; (2) the attorney was negligent in his representation of the client; and (3) as a result of the negligence the plaintiff suffered some loss. Beis *607 v. Bowers, 94-0178 (La.App. 4th Cir. 1/19/95), 649 So.2d 1094, writ denied, 95-0429 (La.3/30/95), 651 So.2d 847; Evans v. Detweiler, 466 So.2d 800 (La.App. 4th Cir.1985). Chuzi admits in his answer that an attorney-client relationship existed between himself and Butler. There is no genuine issue of material fact as to this element. Chuzi admits to representing Butler, but only for “the purpose of having [the plaintiffl reinstated as a full-time agent with the Federal Bureau of Investigation.”
In support of his motion for summary judgment, Chuzi presented a number of documents. Chuzi argues that these materials, and the applicable federal disability statutes, together, establish that Butler suffered no loss, even assuming that he should have filed for a disability retirement on behalf of Butler. 5 U.S.C.A. § 8337 provides in part:
(a) An employee who completes 5 years of civilian service and has become disabled shall be retired on the employee’s own application or on application by the employee’s agency. Any employee shall be considered to be disabled only if the employee is found by the Office of Personnel Management to be unable, because Uof disease or injury, to render useful and efficient service in the employee’s position and is not qualified for reassignment, under procedures prescribed by the Office, to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service_
(b) A claim may be allowed under this section only if the application is filed with the Office before the employee or Member is separated from the service or within 1 year thereafter. This time limitation may be waived by the Office for an employee or Member who at the date of separation from service or within 1 year thereafter is mentally incompetent, if the application is filed with the Office within 1 year from the date of restoration of the employee or Member to competency or the appointment of a fiduciary, whichever is earlier. [ (Emphasis added).]
The basic requirements for disability retirement are also set forth in the Code of Federal Regulations at 5 C.F.R. § 831.1203 as follows:
(a) Except as provided in paragraph (b) of this section, the following conditions must be met for an individual to be eligible for disability retirement:
(1) The individual must have completed at least 5 years of civilian service that is creditable under the Civil Service Retirement System.
(2) The individual must, while employed in a position subject to the Civil Service Retirement System, have become disabled because of a medical condition, resulting in a service deficiency in performance, conduct, or attendance, or if there is no actual service deficiency, the disabling medical condition must be incompatible with either useful and efficient service or retention in the position.
(3) The disabling medical condition must be expected to continue for at least 1 year from the date the application for disability retirement is filed.
(4) The employing agency must be unable to accommodate the disabling medical condition in the position held or in an existing vacant position.
(5) An application for disability retirement must be filed with the Office of Personnel Management (OPM) before the employee separates from service, or within 1 year thereafter. This time limit can be waived only in certain instances explained in s 831.1204....
(Emphasis added).
Chuzi maintains he was retained to get Butler reinstated to the FBI. In connection with his attempt to get reinstated, Butler executed an affidavit on April |s5, 1988. In the affidavit he set out his FBI disciplinary history. In May 1978 he was charged with assault and battery in Washington, D.C., in connection with a physical altercation with a gas station attendant. In July 1978 he was involved in an altercation at a New York City hotel resulting in his being detained by hotel security and turned over to New York City police. He claims that during review of his conduct by FBI personnel his alcoholism problems became known to agency person *608 nel. In November 1983, after being transferred to the FBI’s New Orleans office, he crashed his FBI vehicle into a building in Metairie. He said his blood alcohol level at that time was .33, three times the lawful limit in Louisiana. During the investigation of that incident by FBI personnel he informed investigators that he was an alcoholic. He was subsequently suspended without pay for 45 days for the accident. Butler said after this 1983 incident he sought counseling on his own with a clinic and attended Alcoholics Anonymous meetings. Following his return from suspension Butler said he performed his duties in a responsible manner until February 17, 1987 when he went out for a night of drinking in uptown New Orleans. He woke up the next morning at home and discovered he had lost his FBI vehicle. Three days later he was informed by an FBI agent that his vehicle had been located. He was informed that day he would probably lose his job because of the incident Butler subsequently participated in a 28-day in-patient substance abuse treatment program at a local hospital “and upon successful completion of that Program, returned to duty with a letter stating that [he] was fit for full duty.” This affidavit was given as Butler was trying to convince the FBI that he had problems with alcoholism, that he never received any indication that he would be removed from service because of the problem, that he | shad sought and received treatment on his own, but was then “fit for full duty ” as a FBI agent.
In a March 1994 deposition, Butler confirmed that he returned to duty with a letter stating that he was fit for full duty as attested to in his April 1988 affidavit. Prior to his termination, Butler had a New Orleans attorney write a letter on his behalf to an Assistant Director of Administrative Services for the FBI, representing that Butler had “many years of good service” left and imploring that reconsideration be given to his then imminent dismissal. That same attorney wrote U.S. Senator J. Bennett Johnston asking for assistance, representing that Butler’s “rehabilitation seems to be effective” and that he “was every bit a good federal employee.”
Jane Roach, the director of the New Freedom Institute, Inc., a counseling center, wrote a “To Whom It May Concern” letter dated June 1, 1987, stating that Butler had been seeing her for his alcoholism problem since 1982 and, at the time of the letter, was “doing very well” and in recovery with a good prognosis. In a January 1995 deposition Ms. Roach was asked whether at the time she wrote the June 1987 letter it was her opinion that Butler was able to return to work, she replied: “Sure.- I expected him to.” Asked if she meant as an FBI agent she replied: “Yes.” Asked if Butler wished to return to work as an FBI agent, she said: “I thought he was going to die for fear of losing his job.” She said he never expressed any desire to take retirement from the FBI.
In an October 12, 1995 affidavit, filed in opposition to Chuzi’s motion for summary judgment, Butler stated that he was dismissed from the FBI as a result of “his suffering from the disease of alcoholism which caused him to be unable to render useful and efficient service as an FBI agent.” He further stated that he ^continued to suffer from the effects of alcoholism and that it had affected his ability to work, specifically as a security guard. The affidavit of Rowland Schneider, then employed as personnel manager of New Orleans Private Patrol, formerly supervised Butler and stated that he exhibited a drinking problem while employed by New Orleans Private Patrol and on one occasion appeared in an inebriated state at the corporate offices of the business. He further stated that Butler had resigned from the business. At the time of his March 1994 deposition, Butler was working as a substitute high school teacher in Florida and also as part-time instructor at Broward Community College Police Academy, teaching criminal investigation to police recruits. He was also seeking separate certifications to enable him to teach full-time at the high-school and community college levels.
In Butler’s November 17,1987 termination letter from John D. Glover, executive Assistant Director of the FBI, he was informed:
In view of the fact that the misconduct, which causes me to find you are no longer suitable for Bureau employment, is alcohol *609 related, you may possibly be eligible for a disability retirement. I urge you to give serious consideration to filing an application for disability retirement with the Office of Personnel Management. You may wish to contact a Retirement Counselor at FBI Headquarters for assistance in preparing your disability retirement application. Following your removal from the rolls, you have one year in which to make such application.
Butler had one year from the date of his termination to file a disability claim. 5 U.S.CA § 8837; 5 C.F.R. § 831.1203. During this period he was maintaining that he was capable of returning to duty — that he was suitable for employment as an FBI agent. Butler’s substance abuse counselor felt he was able to return to employment as an FBI agent during this period.
|gOn the other hand, Butler challenged his dismissal in federal district court and lost. He appealed to the U.S. Court of Appeal for the Fifth Circuit and lost, and the U.S. Supreme court denied certiorari. Butler v. Thornburgh, 900 F.2d 871 (5th Cir.1990), cert. denied, 498 U.S. 998, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990). The Fifth Circuit rejected Butler’s argument that he was somehow protected under the federal Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701-794, which “prohibits the federal government from engaging in employment discrimination against handicapped persons.” 900 F.2d at 874. The Fifth Circuit assumed for purposes of its opinion that alcoholism was a handicap under the act. However, the court went on to cite 29 U.S.C.A. § 706(8)(B) (now contained in (8)(C)(v)), which provides that the term “individual with a disability” does not include an individual who is an alcoholic whose current use of alcohol prevents him from performing the duties of the job in question or whose employment, because of such alcohol abuse, would constitute a direct threat to property or the safety of others. The court found:
[Wjhether or not Butler comes within the scope of the protections of the Rehabilitation Act, his position as a law enforcement officer means that his alcoholic incidents furnish a sufficient basis for his discharge because he cannot carry on his work safely.... [A]n FBI special agent stands on the front line of law enforcement; and alcohol dependency would seriously compromise his ability to function and could pose just such a threat to the safety of others as is proscribed by regulation. Thus, the Rehabilitation Act offers no protection to Butler because he has shown himself incapable of safely performing his duties, even the simplest of which — carrying a loaded firearm — is a demanding and dangerous one. (Citations omitted).
We cannot consider this finding by the Fifth Circuit, that Butler was unable, because of his “current” alcoholism, to perform the duties of an FBI special agent and then hold, as urged by Chuzi, that Butler would not have been entitled to a | gdisability retirement because he and a substance abuse counselor represented that he was capable of returning to work as an FBI agent. The U.S. Court of Appeal for the Fifth Circuit has essentially found that Butler in fact did suffer from a “disabling medical condition ... incompatible with either useful and efficient service or retention in the position [of FBI agent],” and thereby might have been considered disabled for purposes of receiving a disability retirement. See 5 C.F.R. § 831.1203. Accordingly, we are unable to say there is no genuine issue of fact as to whether Butler would have been entitled to a federal disability retirement, and thus, whether he suffered any loss or damage as a result of Chuzi’s failure to file a disability claim on his behalf.
Finally, as to whether Butler retained Chuzi to represent him with regard to a disability claim, there is a genuine issue as to this fact. Butler alleges in his petition that Chuzi was retained with regard to this claim, he attests to this fact in his affidavit, and Chuzi in his answer denies this allegation.
For the foregoing reasons, we reverse the judgment of the trial court and remand this ease for further proceedings consistent with this decision.

REVERSED AND REMANDED.

. The plaintiff retained two attorneys, defendant Chuzi and Winthrop Gardner. Gardner, who was also named as a defendant to this suit, is not a party to this appeal.